USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:  04/28/2016

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X
                                   :

LIN WAI MAO, et al.,                     :

                     Plaintiffs,       :          15-CV-6252 (JMF)

                                   :

             -v-            :      MEMORANDUM OPINION

                                   :       AND ORDER

SANDS BETHWORKS GAMING LLC, et al.,    :

                                   :

                  Defendants.     :

                                   :
-----------------------------------------------------------------------X

JESSE M. FURMAN, United States District Judge:

       Plaintiffs Lin Wai Mao and Chin Chiu bring this suit on behalf of themselves and others similarly situated, alleging violations of the Federal Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL") by their former employer, Lucky 9 Enterprise, Inc. ("Lucky 9"), and other, allegedly related Defendants.  Two of those Defendants, Sands Bethworks Gaming LLC and Sands Bethworks Retail LLC (together, the "Sands Defendants"), move to dismiss the Complaint pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure, for lack of personal jurisdiction.  (Docket No. 18).  For the reasons stated below, their motion is GRANTED.

## BACKGROUND

       The following facts, taken from the Complaint, exhibits attached thereto, statements or documents incorporated into the Complaint by reference, and documents that Plaintiffs either possessed or knew about, and relied upon, in bringing suit, are assumed to be true for the purposes of this motion.  *See, e.g.*, *Kleinman v. Elan Corp.*, 706 F.3d 145, 152 (2d Cir. 2013);

*LaFaro v. N.Y. Cardiothoracic Grp., PLLC*, 570 F.3d 471, 475 (2d Cir. 2009); *Kernan v. Kurz-Hastings, Inc.*, 175 F.3d 236, 240 (2d Cir. 1999).[1]

Lucky 9 is a travel agency that transports people from New York to Bethlehem, Pennsylvania, to visit the casino and retail complex operated there by the Sands Defendants. (Compl. (Docket No. 1) ¶¶ 13-17).  Lucky 9 sells tickets to transport its customers to and from the casino complex and advertises the Sands casino on its tickets; further, upon arrival, Lucky 9 customers are given vouchers by Sands Bethlehem employees to be used at the casino.  (*Id.* ¶¶ 9, 27, 35, 43, 58).  Lucky 9 only transports customers to and from the Sands complex.  (*Id.* ¶ 17). The Lucky 9 bus schedules are largely determined by the Sands Defendants.  (*Id.* ¶¶ 33-34, 67-72).  Lucky 9 employed Plaintiffs Lin Wai Mao and Chin Chiu as tour guides from May 2013 to October 2014 and December 2012 to March 2015, respectively.  (*Id.* ¶¶ 39, 54).  As tour guides, Plaintiffs were responsible for selling tickets, traveling with customers to and from the casino, and assisting them while there.  (*Id.* ¶¶ 41, 56).

Plaintiffs contend that, while working as tour guides for Lucky 9, they were not paid the minimum wage and overtime rates mandated by the FLSA and the NYLL.  (*Id.* ¶¶ 51-52, 62-63). They bring this purported collective and class action on behalf of themselves and similarly situated employees at Lucky 9 and other bus companies.  (*Id.* ¶¶ 76-87).  Named in their suit are the Sands Defendants; Lucky 9; two individual owners and managers of Lucky 9; and one

---

[1]     The Sands Defendants contest many of the "facts" in the Complaint, and request an evidentiary hearing, but they largely take issue with Plaintiffs' legal conclusions, not the bare facts presented.  (*See* Defs. Sands Bethworks Gaming LLC & Sands Bethworks Retail LLCS' Rule 12(b)(2) Mot. To Dismiss (Docket No. 19) ("Defs.' Mem.") 1, 6).  In any event, because Plaintiffs do not satisfy their burden of alleging even minimally sufficient jurisdictional facts, an evidentiary hearing is not necessary.  *See, e.g.*, *Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 86 (2d Cir. 2013) (per curiam) (noting that a district court would not err in failing to hold an evidentiary hearing on personal jurisdiction where the nonmoving party has failed to make a *prima facie* showing of jurisdiction).

hundred John Doe Corporations, other travel agencies that transport customers to the Sands casino. (*Id.* ¶¶ 13-19). On November 20, 2015, the Sands Defendants moved to dismiss Plaintiffs' Complaint for lack of personal jurisdiction. (Docket No. 18). The other Defendants (the "Non-Moving Defendants") have not yet appeared in this action.

## DISCUSSION

It is well established that a plaintiff bears the burden of establishing a court's personal jurisdiction over each particular defendant. *See, e.g.*, *Penguin Grp. (USA) Inc. v. Am. Buddha*, 609 F.3d 30, 34 (2d Cir. 2010). In a federal question case involving a defendant residing outside the forum state, as is the case here with the Sands Defendants, personal jurisdiction is determined by the law of the forum in which the court sits — here, New York. *See PDK Labs, Inc. v. Friedlander*, 103 F.3d 1105, 1108 (2d Cir. 1997); *CutCo Indus. v. Naughton*, 806 F. 2d 361, 365 (2d Cir. 1986). The showing a plaintiff must make, however, to defeat a jurisdiction-testing motion "'varies depending on the procedural posture of the litigation.'" *Dorchester*, 722 F.3d at 84 (quoting *Ball v. Metallurgie Hoboken-Overpelt, S.A.*, 902 F.2d 194, 197 (2d Cir. 1990)). Where, as here, the parties have not engaged in discovery, a plaintiff seeking to defeat a motion to dismiss based on the lack of personal jurisdiction need only make a *prima facie* showing that jurisdiction exists. *See, e.g.*, *id.* at 84-85; *CutCo*, 806 F.2d at 364-65. Such a showing "entails making 'legally sufficient allegations' . . . including 'an averment of facts that, if credited[,] would suffice'" to establish that jurisdiction exists. *Penguin Grp.*, 609 F.3d at 35 (quoting *In re Magnetic Audiotape Antitrust Litig.*, 334 F.3d 204, 206 (2d Cir. 2003) (per curiam)). A court must therefore "view[ ] all facts in the light most favorable to the non-moving party" when evaluating a motion to dismiss for lack of personal jurisdiction. *TradeComet.com LLC v. Google, Inc.*, 647 F.3d 472, 475 (2d Cir. 2011). A court will not, however, "accept conclusory

allegations or draw argumentative inferences." *In re Terrorist Attacks on Sept. 11, 2001*, 392 F.

Supp. 2d 539, 556 (internal quotation marks omitted) (citing *Mende v. Milestone Tech., Inc.*, 269

F. Supp. 2d 246, 251 (S.D.N.Y. 2003)).

To establish personal jurisdiction, Plaintiffs rely solely on Section 302(a)(1) of New

York's long-arm statute (*see* Pls.' Mem. Law Opp'n Defs.' Mot. To Dismiss (Docket No. 22)

("Pls.' Mem.") 3-4), which permits a court to exercise jurisdiction over a person or entity that "in

person or through an agent . . . transacts business within the state or contracts anywhere to supply

goods and services in the state." N.Y. C.P.L.R. § 302(a). To determine whether jurisdiction

exists under Section 302(a)(1), a court must decide "(1) whether the defendant transacts any

business in New York and, if so, (2) whether this cause of action arises from such a business

transaction." *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 246 (2d Cir. 2007) (internal

quotation marks omitted). "[T]he overriding criterion necessary to establish a transaction of

business is some act by which the defendant purposefully avails itself of the privilege of

conducting activities within New York." *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*,

673 F.3d 50, 61 (2d Cir. 2012) (internal quotation marks omitted). As for the statute's second

requirement, "a suit will be deemed to have arisen out of a party's activities in New York if there

is an articulable nexus, or a substantial relationship, between the claim asserted and the actions

that occurred in New York." *Id.* at 66 (brackets and internal quotation marks omitted). Section

302(a)(1) may be satisfied by a single act within New York, *see id.* at 62, but "jurisdiction will

not extend to cover defendants with nothing more than petty contacts to the state," *Tamam v.

Fransabank Sal*, 677 F. Supp. 2d 720, 726 (S.D.N.Y. 2010) (internal quotation marks omitted).

Applying those standards here, Plaintiffs fall short of what they need to show to establish

personal jurisdiction over the Sands Defendants. Plaintiffs do not contend that the Sands

Defendants own any property in New York or have any offices or bank accounts in New York. (*Cf.* Aff. Michele Trageser (Docket No. 20) ¶¶ 6-9). Instead, Plaintiffs argue that the Sands Defendants are subject to personal jurisdiction in New York because they "do business in the State of New York through their travel agencies contractors [*sic*], who advertise Sands Bethlehem and shuttle customers from designated pick-up points in New York straight to Sands Bethlehem in Pennsylvania, and back." (Compl. ¶ 9; *see* Pls.' Mem. 3). More specifically, Plaintiffs contend that personal jurisdiction lies because the Sands Defendants either qualified as their joint employers with Lucky 9 or that Lucky 9's tour guides acted as the Sands Defendants' employees or agents in New York. (*See* Pls.' Mem. 4-8). Notwithstanding the Complaint's conclusory references to Lucky 9 as a "contractor" and its assertion that the Sands Defendants "entered into contracts with travel agencies such as Lucky 9" (Compl. ¶ 27), however, the record makes clear that there was no formal contract between the Sands Defendants and Lucky 9. Instead, the only "agreement" between the Sands Defendants and Lucky 9 was a "Non-Subsidy Agreement" that the latter was required to execute in order to be register to bring its buses to the casino. (Aff. Kathy McCracken (Docket No. 21) ("McCracken Aff.") ¶¶ 2-7; *id.*, Ex. A). That document expressly states that it does "not constitute a binding contract upon either party for the provision of tour bus services to or from the Sands" and grants "sole discretion" to the Sands Defendants to add or delete bus runs, to provide "competitive bonus[es]" to Lucky 9's customers, and to provide "appropriate levels of advertising." (*Id.*, Ex. A., at 3).[2]

---

[2]    The Court may consider the "Non-Subsidy Agreement," both because it is incorporated by reference into the Complaint, *see, e.g.*, *Kleinman*, 706 F.3d at 152, and because the Court is permitted to review affidavits in connection with a motion under Rule 12(b)(2), *see, e.g.*, *Dorchester Fin. Sec.*, 722 F.3d at 86; *Marine Midland Bank, N.A. v. Miller*, 664 F.2d 899, 904 (2d Cir. 1981).

It is unlikely that the "Non-Subsidy Agreement" qualified as a binding contract. *See Kavitz v. Int'l Bus. Machs., Corp.*, 458 F. App'x 18, 19-20 (2d Cir. 2012) (summary order) (holding that there was no enforceable contract where the parties' agreement "state[d] explicitly that it 'does not constitute an express or implied contract or a promise'"). But even if it did, the agreement did not provide the Sands Defendants with any control over Lucky 9, much less the kind of control that would make Lucky 9 — and its employees — agents of the Sands Defendants in New York. *See, e.g.*, *Brady v. Basic Research, LLC*, 101 F. Supp. 3d 217, 230 (S.D.N.Y. 2015) (noting that, for a defendant to be subjected to jurisdiction in New York based on the activities of an agent, plaintiffs must establish "that the agent engaged in purposeful activities in this State in relation to plaintiffs' transaction for the benefit of and with the knowledge and consent of the defendants and that they exercised some control over the agent in the matter" (brackets and internal quotation marks omitted)); *RMS Prod. Corp. v. Fridman*, 643 F. Supp. 2d 382, 401-402 (S.D.N.Y. 2009) (dismissing claims for lack of jurisdiction where the complaint was "entirely devoid of any allegation" that the purported agents "were acting for [the defendant's] benefit, with his knowledge and consent, and subject to his control"); *see also, e.g.*, *Anderson v. Ind. Black Expo, Inc.*, 81 F. Supp. 2d 494, 503-504 (S.D.N.Y. 2000) (finding that the parties did not have an agency relationship for purposes of jurisdiction in light of the lack of evidence that either of the purported agents "ever took or directed any actions on [the other parties'], as opposed to his own, behalf"); *Howard v. Klynveld Peat Marwick Goerdeler*, 977 F. Supp. 654, 662 (S.D.N.Y. 1997) (holding that there was no agency relationship where the evidence showed no control, income sharing, or assumption of liabilities); *Sales Arm, Inc. v. Auto. Club of S. Cal.*, 402 F. Supp. 763, 766 (S.D.N.Y. 1975) (finding that there was no personal

jurisdiction on the basis of a contract that explicitly disavowed the creation of a joint venture or employee status).

More broadly, Plaintiffs fail to make even a *prima facie* case that they (or any other employees of Lucky 9) qualified as "employees" of the Sands Defendants.  To establish that the Sands Defendants were Plaintiffs' "joint employer" under the FLSA or NYLL, and thus had employees in New York, Plaintiffs would have to plead and prove that the Sands Defendants "permitted" or "suffered" them to work as a matter of "economic reality."  *Zheng v. Liberty Apparel Co.*, 355 F.3d 61, 66 (2d Cir. 2003); *see also, e.g.*, *Olvera v. Bareburger Grp. LLC*, 73 F. Supp. 3d 201, 206 (S.D.N.Y. 2014) (noting that "Courts in this District have regularly applied the same tests to determine, under the FLSA and NYLL, whether entities were joint employers" and collecting cases).  Several factors guide that analysis: whether the purported employer "(1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records."  *Zheng*, 355 F.3d at 67 (quoting *Carter v. Dutchess Cmty. Coll.*, 735 F.2d 8, 12 (2d Cir. 1984)).  Here, none of those factors is met.  Plaintiffs make no allegations that the Sands Defendants had the power to hire or fire Lucky 9 employees, that they set the rate and method of payment, or that they regulated the conditions of their employment in any way.  (*See* Compl. ¶¶ 29-30; Pls.' Mem. 4-7).  In fact, the Complaint specifically states that Chiu was fired by a Lucky 9 Manager, not by the Sands Defendants.  (Compl. ¶ 74).  And while Plaintiffs do allege that the Sands Defendants maintained control over the bus schedules (*see id.* ¶ 29; Pls.' Mem. 5-7), that is not the sort of control over employee work schedules or conditions of employment that suffices to establish an employer-employee relationship.  *See, e.g.*, *Godlewska v. Human Dev. Ass'n, Inc.*, 916 F. Supp. 2d 246, 259 (E.D.N.Y. 2013) (holding that

one defendant did not control work schedules for purpose of joint employment where it merely determined "when a certain job will be performed," while another employer determined the actual schedules for each employee); *Jean-Louis v. Metro. Cable Commc'ns, Inc.*, 838 F. Supp. 2d 111, 125-26 (S.D.N.Y. 2011) (finding that the defendant cable company was not a joint employer, despite setting times for installation jobs, where a vendor determined which technicians would actually be assigned to the jobs).[3]

In the absence of employees or agents in New York, Plaintiffs are left to rely on their allegations that the Sands Defendants solicit business in New York (presumably via advertisements, although Plaintiffs do not specify) and that Lucky 9 ferries a substantial number of customers to the Sands venues — and only to the Sands venues.  (Pl.'s Mem. 5.)  But the mere solicitation of business or advertisement in New York, without more, is insufficient to confer jurisdiction under Section 302(a)(1).  *See, e.g.*, *Fiedler v. First City Nat'l Bank of Hous.*, 807 F.2d 315, 317-18 (2d Cir. 1986) (holding that telephone and mail solicitation alone does not provide personal jurisdiction); *Jin v. EBI, Inc.*, No. 05-CV-4201 (NGG), 2006 WL 3335102, at *6 (E.D.N.Y. Oct. 17, 2006) ("[S]olicitation alone is insufficient to establish long-arm jurisdiction in New York." (internal quotation marks omitted)); *Maranga v. Vira*, 386 F. Supp. 2d 299, 308 (S.D.N.Y. 2005) (noting that defendants are "not subject to § 302(a)(1) jurisdiction simply by virtue of having placed advertising in a New-York-based publication").  And the fact that the Sands Defendants derive an economic benefit from their relationship with Lucky 9 is also insufficient to confer personal jurisdiction.  Were it otherwise, almost any tourist attraction outside New York could be subjected to personal jurisdiction within New York based solely on it

---

[3]     Plaintiffs' inability to plead and prove that the Sands Defendants qualified as joint employers would presumably doom their FLSA and NYLL claims on the merits as well.  But whether Plaintiffs can state a claim against the Sands Defendants is not the issue here.

solicitation of business from travel agents in the state.  That is not the law.  *See, e.g.*, *Brown v. Grand Hotel Eden*, 00-CV-7346 (NRB), 2003 WL 21496756, at *5 (S.D.N.Y. June 30, 2003) (holding that the court lacked jurisdiction over a Swiss hotel that worked with a New York travel agency but did not give it full control over reservations); *Lane v. Vacation Charters, Ltd.*, 750 F. Supp. 120, 126 (S.D.N.Y. 1990) (holding that a Pennsylvania ski resort's relationship with a New York travel agent did not confer jurisdiction).

## CONCLUSION

For the foregoing reasons, the Sands Defendants' motion is GRANTED, and Plaintiffs' claims against the Sands Defendants are dismissed for lack of personal jurisdiction.  The Sands Defendants are not the only Defendants in this case, however, and the Non-Moving Defendants (who have been identified) appear to be in default.  Plaintiffs filed their Complaint with the Court on August 10, 2015.  (Docket No. 1).  The Non-Moving Defendants were served with the Complaint, and proof of service was filed with the Court.  (Docket Nos. 15, 24, 25).  To date, the Non-Moving Defendants have neither answered the Complaint, nor otherwise appeared in this action.  In light of the foregoing, it is hereby ORDERED that any motion for default judgment shall be filed, in accordance with the Court's Individual Rules and Practices for Civil Cases (*see* http://nysd.uscourts.gov/judge/Furman), no later than **two weeks** from the date of this Memorandum Opinion and Order.  The remaining Defendants shall file any opposition to the motion for default judgment no later than **one week** after that.  If a motion for default judgment is filed, it is further ORDERED that the Non-Moving Defendants show cause before this Court, Courtroom 1105 of the Thurgood Marshall Courthouse, 40 Centre Street, New York, New York, on **June 9, 2016, at 3:00 p.m.**, why an order should not be issued granting a default judgment against them.

It is further ORDERED that Plaintiffs serve the Non-Moving Defendants via overnight courier with (1) a copy of this Memorandum Opinion and Order and (2) a copy of the motion for default judgment and all supporting papers within **one day** of the date of this Memorandum Opinion and Order and the date of the motion, respectively, and promptly file proof of such service on the docket.

The Clerk of Court is directed to terminate the Sands Defendants as Defendants in this case, and to terminate Docket No. 18.

SO ORDERED.

Date:   April 28, 2016
        New York, New York

JESSE M. FURMAN
United States District Judge